FILED
9/28/2021 3:31 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Alicia Mata DEPUTY

CAUSE NO. DC-21-14426 _____

| | | |
|---|---|---|
| BRYNHILL INVESTMENTS, LLC, <br> STONEHILL INVESTMENTS, LLC; <br><br> Plaintiffs, <br><br> v. <br><br> NTENT, INC., PATRICK CONDO, <br> MATTHEW G. JONES; <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | IN THE DISTRICT COURT OF <br><br><br><br> DALLAS COUNTY, TEXAS <br><br><br><br> 101st _____ JUDICIAL DISTRICT |

## ORIGINAL PETITION

Brynhill Investments, LLC ("Brynhill") and Stonehill Investments, LLC ("Stonehill," and collectively with Brynhill, the "Plaintiffs") file this Original Petition against NTENT, Inc. ("NTENT"), Patrick Condo, NTENT's Chief Executive Officer ("Condo"), and Matthew G. Jones, NTENT's Chief Financial Officer ("Jones," and collectively with NTENT and Condo, "Defendants") and in support would show as follows:

### I.   INTRODUCTION

1.   Plaintiffs suffered damages as a direct result of fraudulent misrepresentations and nondisclosures by Defendants related to a $1.5 million investment by Plaintiffs in NTENT. Plaintiffs invested in NTENT based on multiple representations by Condo and Jones, NTENT's top two executives, that NTENT audited its financial statements annually and would provide audited financial statements for 2014 and 2015 as soon as those statements were available.

2.   Unbeknownst to Plaintiffs, NTENT actually had no intention of providing any further audited financial statements beyond 2013 and in fact, ultimately, never provided any audited financial statements to Plaintiffs after the financials for 2013.

**EXHIBIT C-1**

3. Condo and Jones made the misrepresentations and fraudulent nondisclosures regarding NTENT's audited financial statements for the specific purpose of causing Plaintiffs to execute two contracts that resulted in a substantial investment in NTENT.

4. To the extent Plaintiffs can determine NTENT's true financial condition without audited financial statements, NTENT is now effectively insolvent and Plaintiffs' $1.5 million investment is worthless.

## II.   DISCOVERY CONTROL PLAN

5. Plaintiffs request that discovery be conducted in accordance with a Level 3 discovery plan pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

## III.   RULE 47 DAMAGES STATEMENT

6. Plaintiffs seek monetary relief in excess of $1,000,000.00.

## IV.   THE PARTIES

7. Plaintiff Brynhill Investments, LLC is a Nevada limited liability company with its principal offices at 2000 McKinney Avenue, Dallas, Texas 75201.

8. Plaintiff Stonehill Investments, LLC is a Nevada limited liability company with its principal offices at 2000 McKinney Avenue, Dallas, Texas 75201.

9. Defendant NTENT, Inc. is a Delaware corporation with its principal offices located at 1919 Gallows Road, Suite 1050, Vienna, Virginia 22182. NTENT may be served with process by serving the Texas Secretary of State in accordance with Section 17.044(b) of the Texas Civil Practice and Remedies Code because NTENT does not maintain a regular place of business or designated agent for service of process in Texas and because this proceeding arises out of business in Texas as described herein.

10. Defendant Patrick C. Condo is the Chief Executive Officer and Executive Chairman of NTENT, and upon information and belief, is a resident of Virginia. Condo's business

**EXHIBIT C-1**

address is 1919 Gallows Road, Suite 1050, Vienna, Virginia 22182. Condo may be served with process by serving the Texas Secretary of State in accordance with Section 17.044(b) of the Texas Civil Practice and Remedies Code because Condo does not maintain a regular place of business or designated agent for service of process in Texas and because this proceeding arises out of business in Texas as described herein.

11. Defendant Matthew G. Jones is the Chief Financial Officer of NTENT, and upon information and belief, is a resident of Virginia. Jones's business address is 1919 Gallows Road, Suite 1050, Vienna, Virginia 22182. Jones may be served with process by serving the Texas Secretary of State in accordance with Section 17.044(b) of the Texas Civil Practice and Remedies Code because Jones does not maintain a regular place of business or designated agent for service of process in Texas and because this proceeding arises out of business in Texas as described herein.

## V. JURISDICTION AND VENUE

12. The damages sought in this case are within the jurisdictional limits of this Court.

13. This Court has personal jurisdiction over NTENT because NTENT conducts business in Texas as described herein including, but not limited to, contracting with Texas residents Brynhill and Stonehill to invest funds in NTENT and committing a tort in whole or in part in Texas.

14. This Court has personal jurisdiction over Condo because Condo, the Chief Executive Officer and Executive Chairman of NTENT, conducts business in Texas as described herein including, but not limited to, making certain misrepresentations, on behalf of NTENT, to Texas residents Brynhill and Stonehill in soliciting them to invest funds in NTENT and committing a tort in whole or in part in Texas.

15. This Court has personal jurisdiction over Jones because Jones, the Chief Financial Officer of NTENT, conducts business in Texas as described herein including, but not limited to,

**EXHIBIT C-1**

making certain misrepresentations, on behalf of NTENT, to Texas residents Brynhill and Stonehill in soliciting them to invest funds in NTENT and committing a tort in whole or in part in Texas.

16. Venue is proper in Dallas County, Texas pursuant to Section 15.002 of the Texas Civil Practice & Remedies Code because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here and because Plaintiffs' respective places of business are located here.

## VI.   BACKGROUND

**A.   Plaintiffs Conduct Due Diligence And Request Audited Financial Statements**

17. Plaintiffs are both Dallas-based private equity investment companies.

18. Plaintiffs first learned about a potential investment opportunity in NTENT in 2016 and began performing due diligence on a potential investment in the company.

19. Condo, who at the time was the Executive Chairman of NTENT (he later became NTENT's CEO on or about August 7, 2017), and Jones, NTENT's CFO, aggressively solicited Plaintiffs' investment in NTENT.

20. On August 26, 2016, Condo and Jones traveled to Plaintiffs' offices in Dallas, Texas to meet with Plaintiffs' executives to pitch Plaintiffs on a significant investment in NTENT.

21. As part of their due diligence, Plaintiffs requested that Condo and Jones provide NTENT's audited financials for the years 2011 through 2015.

22. It was not only the receipt of the audited financials for 2011 through 2015 that was important to Plaintiffs, but the understanding that NTENT would continue the practice of auditing its financials each year. Audited financial statements by a trusted third-party auditor ensure the material accuracy of financial statements and guard against a range of risks from fraud to identification of various irregularities. As Plaintiffs made clear during the due diligence process, receipt of audited financial statements and knowing that NTENT had a practice of having its

financials audited by a third party were significant factors in Plaintiffs' decision to invest in NTENT.

B.  **Defendants Provide Audited Financial Statements For 2011 Through 2013 And Represented That 2014 And 2015 Audited Financials Would Be Provided**

23. On August 27, 2016, Condo emailed Steve Harasym, Plaintiffs' employee in charge of due diligence efforts with respect to NTENT, and stated "We are supplying all the information. I noticed a request for audited financials, which we are providing as well as the unaudited [financials] but in process."

24. A few days later, on August 31, 2016 Jones emailed Harasym attaching the audited financial statements for 2011, 2012, and 2013. In this same email, Jones also stated that NTENT's auditor was RSM McGladrey. Jones, echoing Condo's statements from August 27th, stated that "McGladrey is completing the 2014 and 2015 audit[,] expected completion is early Oct[tober]."

25. Condo and Jones made these statements on behalf of NTENT knowing and intending Plaintiffs would rely on them in deciding whether to make a significant investment in NTENT.

C.  **Relying On Defendants' Representations As To Audited Financials, Plaintiffs Executed A Purchase Agreement Investing Significant Capital In NTENT**

26. On September 1, 2016, Brynhill and Stonehill each executed a Purchase Agreement with NTENT. Jones executed both Purchase Agreements on behalf of NTENT.

27. Under its Purchase Agreement, Brynhill purchased 41,085 shares of NTENT common stock for a total investment of $1,000,008.90.

28. Under its Purchase Agreement, Stonehill purchased 20,542 shares of NTENT common stock for a total investment of $499,992.28.

29. NTENT realized a total pecuniary gain of $1,500,001.18 when the Plaintiffs executed the respective Purchase Agreements.

30. The representations by Condo and Jones regarding audited financials were a material factor in Plaintiffs' decision to execute the Purchase Agreements. Plaintiffs would not have executed the Purchase Agreements if Plaintiffs knew Defendants had no intention of providing audited 2014 and 2015 financial statements despite their representations that such audited financial statements were "in process."

D. **Jones Concedes NTENT Has No Intention Of Providing The Promised Audited Financials Or Auditing Its Financials At Any Point Thereafter**

31. After executing the Purchase Agreements, Plaintiffs made multiple requests to receive the audited financials that Condo and Jones represented to Plaintiffs would be completed. Each of Plaintiffs' requests for audited financial statements as well as other updates were ignored. Plaintiffs never received the audited financial statements for any year after 2013.

32. On October 25, 2018, Condo again traveled to Dallas, Texas to meet with Plaintiffs' executives about NTENT. At this meeting Condo shared his optimistic outlook for NTENT going forward, including various products and opportunities that were in the pipeline and forecasting a potential "10x return" in 2019.

33. None of the products or opportunities Condo confidently described ever came to fruition and there were no returns, 10x or otherwise.

34. On November 26, 2019, Plaintiffs' employee Csongor Bibza made yet another request through email to Jones for NTENT's audited financial statements for the periods of 2016, 2017 and 2018.

35. Jones responded to Bibza's email on the same day stating "We do not have audited statements for the periods you mentioned - we are a private company so we haven't completed audits for those periods."

36. On both August 27, 2016 and August 31, 2016, Defendants knew, or reasonably should have known, that they did not intend to complete, or provide to Plaintiffs, audited financial statements for the years 2014 and 2015. Further, on both August 27, 2016 and August 31, 2016, Defendants knew, or reasonably should have known, they did not intend to continue to have NTENT's financials audited.

37. November 26, 2019 was the first time Plaintiffs discovered that NTENT apparently had no intention of providing audited financials for any year after 2013 and that Defendants' representations made on August 27, 2016 and August 31, 2016 were thus false and misleading.

38. Plaintiffs would not have invested in NTENT or executed the Purchase Agreements if Plaintiffs had known that NTENT was not completing audited financials for 2014 and 2015 and that NTENT, in fact, would discontinue the practice of having its financials audited going forward.

E.  **Plaintiffs Try To Determine NTENT's True Financial Condition**

39. After receiving Jones's email on November 26, 2019 regarding NTENT's failure to complete audited financials, Plaintiffs began endeavoring to determine the financial condition of NTENT.

40. Throughout early 2020, Brynhill made multiple requests to NTENT to receive financial information, but to little avail. On February 24, 2021, Brynhill served NTENT with a demand for inspection of NTENT's books and records pursuant to Delaware law.

41. As part of the demand for books and records, Brynhill confirmed that NTENT had not completed audited financials since 2013 and that NTENT has no plans to have its financial statements for any year audited.

42. As part of the demand for books and records, NTENT provided internal financial reports to Plaintiffs. Review of those reports shows NTENT's financial condition has significantly deteriorated.

**EXHIBIT C-1**

43. Based on the internal financial reports NTENT provided, if NTENT were to have its financial statements audited, the auditor would likely opine that NTENT is insolvent and effectively no longer a going concern.

44. Further, based on NTENT's internal financial reports, the value of NTENT's common stock has greatly decreased and is worth only a small fraction of the $24.34 price per share the Plaintiffs paid in September 2016, if it is worth anything.

### VII.   CAUSES OF ACTION

**A.   Fraudulent Inducement**

45. Plaintiffs adopt and incorporate herein the allegations set forth above.

46. Condo and Jones represented to Plaintiffs that NTENT's audited financial statements were in process, including for 2014 and 2015. Jones went further, specially representing that the 2014 and 2015 audited financial statements would be provided to Plaintiffs by early October 2016.

47. Condo and Jones's representations regarding completion of NTENT's audited financial statements were material to Plaintiffs' decision to execute the Purchase Agreements to invest more than $1.5 million in NTENT. Plaintiffs would not have executed the Purchase Agreements or invested approximately $1.5 million in NTENT had they known audited financial statements would not be completed or provided for any year after 2013.

48. As Jones acknowledged in November 2019, the representations of Condo and Jones regarding completion of NTENT's 2014 and 2015 audited financial statements were false. NTENT had no intention of completing audited financial statements for these years, or any year thereafter, let alone providing such statements to Plaintiffs.

49. When Condo and Jones made the representations they knew the representations were false, or alternatively, made the representations recklessly without knowledge of whether

NTENT actually intended to complete audited financial statements for at least 2014 and 2015 and provide those audited financial statements to Plaintiffs.

50. Condo and Jones made the representations with the express intent that Plaintiffs act on them by executing the Purchase Agreements to inject approximately $1.5 million into NTENT.

51. Plaintiffs relied on Condo and Jones's representations—indeed, Plaintiffs executed the respective purchase agreements on September 1, 2016, one day after Jones's misrepresentation regarding audited financial statements.

52. Condo and Jones are employees and corporate officers of NTENT and at all times were acting within the course and scope of their duties for NTENT. Moreover, NTENT was a beneficiary of Condo and Jones's misrepresentations and Plaintiffs' resulting $1.5 million investment.

53. As a direct result of Condo and Jones's misrepresentations, Plaintiffs suffered damages, which based on the current financial condition of NTENT, could be the entirety of Plaintiffs' $1.5 million investment.

**B.      Fraudulent Nondisclosure**

54. Plaintiffs adopt and incorporate herein the allegations set forth above.

55. Defendants concealed from Plaintiffs and failed to disclose in August 2016, during negotiations related to the Purchase Agreements and Plaintiffs' investment in NTENT, that NTENT not only did not intend to complete audited financial statements for 2014 and 2015, but also had no plans to continue the practice of auditing its financial statements going forward.

56. Defendants had a duty to disclose these facts to Plaintiffs because Plaintiffs specifically requested audited financial statements for 2014 and 2015 and made clear to Defendants that Plaintiffs expected Defendants to continue NTENT's practice of auditing its financial statements. If NTENT had no intention of having its financial statements audited after

2013, Defendants had a duty to disclose this fact before Plaintiffs executed the Purchase Agreements and invested approximately $1.5 million in NTENT.

57. Condo and Jones's representations regarding completion of NTENT's audited financial statements were material to Plaintiffs' decision to execute the Purchase Agreements to invest more than $1.5 million in NTENT. Plaintiffs would not have executed the Purchase Agreements or invested approximately $1.5 million in NTENT had they known audited financial statements would not be completed or provided for any year after 2013.

58. Defendants knew Plaintiffs were ignorant of whether NTENT was actually having its financial statements audited and did not have an equal opportunity to discover that NTENT was not doing so despite Condo and Jones's representations to the contrary.

59. Defendants were deliberately silent when they had the duty to disclose that NTENT had no plans to have its financial statements audited and the audited statements provided to Plaintiffs after 2013.

60. Plaintiffs relied on Defendants' nondisclosure that NTENT had no plans to provide audited financial statements after 2013—indeed Plaintiffs executed the respective purchase agreements on September 1, 2016, one day after Jones represented that audited financial statements for 2014 and 2015 would be provided by October 2016.

61. Condo and Jones are employees and corporate officers of NTENT and at all times were acting within the course and scope of their duties for NTENT. Moreover, NTENT was a beneficiary of Condo and Jones's nondisclosures and representations and Plaintiffs' $1.5 million investment.

62. As a direct result of Defendants' nondisclosure, Plaintiffs suffered damages, which based on the financial condition of NTENT, could be the entirety of Plaintiffs' $1.5 million investment.

### C. Statutory Fraud – Tex. Civ. Prac. & Rem. Code § 27.01

63. Plaintiffs adopt and incorporate herein the allegations set forth above.

64. Condo and Jones represented to Plaintiffs that NTENT's audited financial statements were in process, including for 2014 and 2015. Jones went further, specially representing that the 2014 and 2015 audited financial statements would be provided to Plaintiffs by October 2016.

65. Condo and Jones's representations regarding completion of NTENT's audited financial statements were material to Plaintiffs' decision to execute the Purchase Agreements to purchase more than $1.5 million worth of NTENT stock. Plaintiffs would not have executed the Purchase Agreements or invested approximately $1.5 million in exchange for more than 60,000 shares of NTENT stock had they known audited financial statements would not be completed or provided for any year after 2013.

66. As Jones acknowledged in November 2019, the representations of Condo and Jones regarding completion of NTENT's 2014 and 2015 audited financial statements was false. NTENT had no intention of completing audited financial statements for these years, or any year thereafter, let alone providing such statements to Plaintiffs.

67. Condo and Jones made the representations with the express intent that Plaintiffs act on them by executing the Purchase Agreements to inject approximately $1.5 million into NTENT in exchange for approximately 60,000 shares of NTENT stock.

**EXHIBIT C-1**

68. Plaintiffs relied on Condo and Jones's representations—indeed, Plaintiffs executed the respective Purchase Agreements on September 1, 2016, one day after Jones's misrepresentation regarding audited financial statements.

69. Condo and Jones are employees and corporate officers of NTENT and at all times were acting within the course and scope of their duties for NTENT. Moreover, NTENT was a beneficiary of Condo and Jones's misrepresentations and Plaintiffs' resulting $1.5 million investment.

70. As a direct result of Condo and Jones's misrepresentations, Plaintiffs suffered damages, which based on the current financial condition of NTENT, could be the entirety of Plaintiffs' $1.5 million investment.

71. Plaintiffs also seek recovery of their court costs, attorneys' fees, and other expenses as provided by Tex. Civ. Prac. & Rem. Code Section 27.01(e).

**D.   Negligent Misrepresentation**

72. Plaintiffs adopt and incorporate herein the allegations set forth above.

73. Defendants' representations regarding NTENT's 2014 and 2015 financial statements as being in the process of being audited was false.

74. Defendants made these representations in course of their business and in a transaction in which each Defendant had an interest. NTENT benefitted directly by Plaintiffs' $1.5 million investment whereas Condo and Jones were officers and agents of NTENT when they made the representations on NTENT's behalf. Each Defendant was also acting in the course of their business to solicit investors in NTENT when the representations were made.

75. Defendants' statements were made for the guidance of Plaintiffs and for the purpose of soliciting Plaintiffs' investment in NTENT.

76. Defendants were reckless and/or failed to exercise reasonable care in obtaining or communicating information regarding NTENT's 2014 and 2015 financial statements.

77. Plaintiffs relied on Defendants' representations—indeed Plaintiffs executed the respective Purchase Agreements on September 1, 2016, one day after Jones's misrepresentation regarding audited financial statements.

78. As a direct result of Defendants' misrepresentations, Plaintiffs suffered damages, which based on the financial condition of NTENT, could be the entirety of Plaintiffs' $1.5 million investment.

### E.  Unjust Enrichment & Recission

79. Plaintiffs adopt and incorporate herein the allegations set forth above.

80. Defendants' fraudulent misrepresentations and nondisclosures resulted in Plaintiffs' execution of the respective Purchase Agreements and payment of $1.5 million to NTENT.

81. As a result, NTENT and its corporate officers Condo and Jones have been unjustly enriched.

82. Plaintiffs have no adequate remedy at law to recover damages.

83. Plaintiffs are not in breach of the Purchase Agreements and are prepared to return to NTENT all shares of NTENT stock Plaintiffs received under the Purchase Agreements.

## VIII.  CONDITIONS PRECEDENT

84. All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred, or were otherwise met, waived, or excused.

## IX.  JURY DEMAND

85. Plaintiffs demand a jury trial for all issues so triable and submits a jury fee herewith.

## X.  RELIEF REQUESTED

**EXHIBIT C-1**

Plaintiffs respectfully request that this Court:

a. After trial on the merits, award Plaintiffs judgment against Defendants, jointly and severally, for Plaintiffs' actual damages suffered as a result of the above-described fraud, including direct, consequential, and exemplary damages;

b. alternatively, grant Plaintiffs the remedy of recission of the Purchase Agreements and return of all shares of NTENT stock received by Plaintiffs under the Purchase Agreements;

c. award Plaintiffs their attorney fees, pre- and post-judgment interest, and costs of suit; and

d. grant Plaintiffs all other relief, at law or equity, to which Plaintiffs may be entitled.

Date: September 28, 2021

Respectfully submitted,

*/s/ Heather Summerfield*
T. Gregory Jackson
   Texas Bar No. 24004718
   greg.jackson@arcadijackson.com
Heather L. Summerfield
   Texas Bar No. 24095772
   heather.summerfield@arcadijackson.com
Aaron C. Christian
   Texas Bar No. 24076089
   aaron.christian@arcadijackson.com
ARCADI JACKSON, LLP
2911 Turtle Creek Blvd., Suite 800
Dallas, Texas 75219
T.  214.865.6458
F.  214.865.6522

**COUNSEL FOR PLAINTIFFS BRYNHILL INVESTMENTS, LLC and STONEHILL INVESTMENTS, LLC**

**EXHIBIT C-1**